GEORGE PICKLE V. CHARITY AUBLE.

If a contract for the sale of real estate is silent as to the kind of funds in which payment is to be made, and the vendor by her conversation at the time of executing the contract justifies a belief on the part of the vendee, that specie will not be demanded, this is a sufficient excuse on the part of the vendee for not tendering specie on the day specified for the payment.

Under such circumstances, a demand of specie on the day of payment by the · vendor, and a refusal on her part to allow the vendee reasonable time to procure it, will not defeat the complainant's right to a specific performance of the contract, especially after his being in possession and making improvements on the property.

Nor will the right of the vendee to a specific performance be defeated by his promise to accept a lease from the vendor, under the impression that his right to demand a deed was lost by the conduct of the vendor in demanding specie, and his inability to pay it.

BILL filed fifth of April, eighteen hundred and thirty-nine, for the specific performance of the following agreement :— ,

" Articles agreed upon between Charity Auble and George Pickle, both of the township of Washington, county of Morris and state of New-Jersey, this thirtieth day of December, in the year of our Lord one thousand eight hundred and thirty-seven. The said Charity Auble, for and in consideration of the sum of eighteen hundred and fifty dollars, to be paid as after mentioned, doth agree with the said George Pickle that she will well and sufficiently convey to the said George Pickle, his heirs and assigns, on or before the first day of May next ensuing, (eighteen hundred and thirty-eight,) all that tract, farm or parcel of land

lying and being in the township of Washington, county of Morris, and state of New-Jersey, whereon the said George Pickle now lives, butted and bounded as follows: Beginning along the Lamington river, thence along the society line to Vanpelt's line, thence along said Vanpelt's line to the widow Mary Hunt's line, thence along the said widow Hunt's line to the Lamington river, thence down said river the several courses thereof to the place of beginning, containing one hundred and twenty-three acres of land, be the same more or less; and the said George Pickle doth for himself, his heirs, executors and administrators, agree with the said Charity Auble, her heirs and assigns, that on the executing of the said conveyance, he will pay to the said Charity Auble the eighteen hundred and fifty dollars purchase money, in the manner following; that is to say, first, four hundred and sixty-two dollars and fifty cents, on or before the first day of May next ensuing, (eighteen hundred and thirty-eight;) second payment of four hundred and sixty-two dollars and fifty cents, to be paid on or before the first day of May, eighteen hundred and thirty-nine; third payment of four hundred and sixty-two dollars and fifty cents, to be paid on or before the first day of May, eighteen hundred and forty; fourth and last payment of four hundred and sixty-two dollars and fifty cents, to be paid on or before the first day of May, eighteen hundred and forty-one; and it is agreed between the said parties that the said George Pickle, his heirs and assigns, may enter upon the said premises on the first day of April next, and take the profits to his own use; and lastly, for the true performance of this agreement, the said parties do bind themselves, their heirs, executors and administrators, each to the other, in the penal sum of three thousand dollars. In witness whereof, the parties have hereunto set their hands and seals, the day and year above written."

The bill, after setting out the contract, charges, that at the time of executing the agreement, the defendant, on being applied to on behalf of the complainant to know in what kind of money she would require the first payment to be made, stated

[Pickle v. Auble]

that as she did not want the money to lie by her, she did not care about having specie, but that any good current bank bills would answer, as she wished to put it out again, or words to that effect; from which the complainant understood that the defendant would not require the payment to be made in specie, but would accept of current bank bills.

The bill further charges, that the complainant procured good current bank notes of specie-paying banks, and on the said first day of May, eighteen hundred and thirty-eight, went to the defendant and offered to pay her the same, and to perform all the covenants in the agreement on his part; that H. Hildebrand, whom she named as her agent, after he had counted about two hundred and fifty dollars, told him to stop counting, that the defendant would receive nothing but gold and silver; that if he had not that kind of money he had broken the agreement, and must give up possession and take a lease, or she would arrest him for damages. The complainant said, if they would give him till the next day he would procure the specie, which they refused; and being threatened with a suit, it was agreed between defendant and complainant that they should meet again on the tenth of May, to come to some arrangement of the matter.

That on the tenth of May the complainant went to defendant's, and requested to know what she would do. She replied, he had not tendered her the specie, and she would have nothing further to do in the business. The complainant thereupon told her if she would take the specie he would bring it to her. She told him to do as he pleased, and refused to hold any further conversation on the subject.

That on the twenty-second of May, he went to the house of defendant and took the whole amount of the first payment in specie to tender to her; inquired, and was informed she was not at home; but he believes she was, and that she kept out of the way of complainant to prevent his tendering the money.

That the complainant, on the same day, caused to be served on her a notice, that on the twenty-third of May he would ten-

27*

der to her four hundred and sixty-four dollars and eighty-one cents, the principal and interest of the first payment ; that on the twenty-third of May he went to her house with the money, and was informed she was not at home.

That from the thirtieth of December, eighteen hundred and thirty-seven, the complainant has been in possession of said premises, and from the first of April, eighteen hundred and thirty-eight, he has held possession under said agreement.

That after the agreement, complainant set to work to make improvements; and between that time and the first of May, eighteen hundred and thirty-eight, expended two hundred dollars in putting on said farm seven hundred and twenty-five bushels of lime, sixteen hundred yards of draining, one hundred loads of stone, and in clearing up swamps and hedges, and thereby materially raised the value of the farm. That said improvements were made with the knowledge of defendant, and without notice that she did not intend to fulfil said contract.

The bill further states, that the complainant always intended in good faith to fulfil the agreement on his part.

That as well on the said first of May, eighteen hundred and thirty-eight, as at all times since, he has been ready to pay the first installment of the purchase money mentioned in said agreement, and to secure the balance of said purchase money by mortgage on the said premises, or in any other satisfactory manner, and in all things to fulfil the said agreement on his part; has frequently offered to do so upon the defendant's conveying to him the premises in said agreement mentioned ; but that the defendant has refused to convey the said premises, and still refuses so to do, without assigning any other reason for so doing, except that the complainant did not tender her the first payment in specie, on the said first day of May.

That on the twenty-eighth day of December, eighteen hundred and thirty-eight, the complainant was notified to quit the premises on the first day of April next ensuing, that being the end of his lease, or that he would be held liable as a trespasser; and that the complainant has been informed and believes, that

the defendant intends to commence proceedings at law, for the purpose of recovering the possession of said premises from the complainant.

The bill prays that the defendant may be decreed to convey to the complainant the said premises, in pursuance of the said articles of agreement; and that she may be restrained from proceeding at law to turn the complainant out of possession.

Upon filing the bill, the injunction was allowed and issued.

The defendant, by her answer, denies that she recollects saying that good current bank bills would answer, but alleges that she said that she wanted " good money."

That she understood there was difficulty about bank notes, as they did not pay specie. The complainant said he had put his money out pretty much in silver, and meant to have such money. She expected him to come prepared to pay specie.

Insists, that by the statute of frauds, such agreement must be in writing.

That on the first of May, eighteen hundred and twenty-eight, Henry Hildebrand attended for her; a deed was prepared, executed and acknowledged; that Hildebrand, for defendant, tendered the deed to complainant, and offered to deliver it on his making first payment; that complainant counted out in bank notes, about two hundred dollars, said it was all he had, except about forty dollars in silver, which he did not show; the defendant saw no other money that day; that Hildebrand asked her if she would take such money, and she told him she wanted "good money;" and Hildebrand saying she was not obliged to take it, she declined receiving it; denies that he tendered her the amount of the first payment, or that the notes tendered were notes of specie paying banks; denies that she threatened to sue him the next day, or made any proposition about money; states that complainant said he had not specie, and did not know where to get it; and that the defendant considered the matter at an end; that the complainant then made a proposition to lease it for three years, and she agreed to rent it to him for one year; that

complainant and defendant agreed that the sale should be given up, and that she should lease it to him for one year ; Hildebrand was to prepare a lease ; he made a memorandum of the terms, and they were to meet at defendant's house on the tenth of May then next ; that they parted with the explicit understanding that the agreement of sale was to be given up, and that the complainant was to sign the lease ; they were to meet on the tenth of May for that purpose ; denies they were to meet to make any other arrangement ; that on the tenth of May, Hildebrand had prepared the lease, and defendant had it ready to be delivered ; that complainant and one S. R. H. came to defendant's house, staid a few minutes and went away, without saying any thing about the business they came for ; she has had no further conversation with him since ; denies that complainant told her that if she would take specie he would go and get it ; admits that it may be true that complainant was at her house on the twenty-second and twenty-third of May, as she is induced to believe his design was to draw her into some further negotiation ; denies that he ever tendered her the first payment in gold and silver ; admits that complainant has continued in possession of the premises, but denies that it was under the agreement of sale ; admits that on the twenty-eighth of December, eighteen hundred and thirty-eight, she served notice on complainant to give up possession on the first of April next, and alleges that he refused to give up possession on that day ; denies that complainant laid out two hundred dollars on improving the place, or any thing over what it was his duty to do as tenant, in keeping the farm in tenantable repair ; admits that he burnt one kiln of lime, cut wood to burn it on the premises, put part on the land and sold a part, equal to the actual expense of burning what he put on the farm, which was about equal to the value of the wood used to burn it ; that he made some rails and repaired fences ; cut the timber on the farm, but not more than was necessary to put the farm in tenantable repair ; may have drawed off some stone, and cut some bushes ; states that he had been her tenant for three years, and was bound to manage the

farm in a proper and husband-like manner, according to the course of good farming; to make rails and keep up fences, to clear out bushes, draw off stones necessary to be removed, and that he did not do so, but double cropped the farm and exhausted the soil, let the fences go to decay, with which she was dissatisfied; and if he put part of a kiln of lime on the place, made rails and repaired fences he had suffered to go to decay, hauled off stone, and cut bushes, he did nothing more than he was bound to do within the three years, as a tenant; that on the first of May, eighteen hundred and thirty-eight, he did not mention or make any objection on account of these alleged repairs; that on the first of May, eighteen hundred and thirty-eight, complainant, or his agent, was the first to propose giving up the agreement of sale and taking a lease; that the meeting on the tenth of May was for the purpose of having the agreement cancelled, and the lease signed, which he evaded and omitted to do.

The cause was heard upon the bill, answer, replication and proofs.

*J. W. Miller*, for complainant.

This bill was filed to compel the specific performance of an agreement entered into between the parties, under seal, on the thirtieth day of December, A. D. eighteen hundred and thirty-seven, concerning the sale and conveyance of a certain farm.

At the time of making this agreement, the complainant was in possession of the farm as tenant under the defendant, his tenancy to expire on the first day of the then next April. By a covenant in the said agreement, it was agreed "that the complainant might enter upon the said premises on the first day of April next, and take the profits to his own use." The complainant, therefore, was in the possession of the premises under and by virtue of the agreement, from the first day of April, to the first day of May, A. D. eighteen hundred and thirty-eight, when a conveyance of the title was to be made.

The defendant covenants to convey the premises to complainant on or before the first day of May, A. D. eighteen hundred

and thirty-eight, when the complainant agrees on his part to pay the sum of four hundred and sixty-two dollars and fifty cents, being the first payment; the balance of the purchase money to be paid in three equal yearly payments, of four hundred and sixty-two dollars and fifty cents each.

The dispute between these parties, arose about the first payment to be made by the complainant. The evidence proves that on the first day of May, eighteen hundred and thirty-eight, the complainant went to the house of the defendant for the purpose of fulfilling the agreement on his part, and offered so to do, when the defendant refused to comply on her part, solely upon the ground that the first payment was not tendered in gold and silver; that the complainant was surprised by this objection, and requested time to exchange the money, which was refused to him, and the defendant thereupon declared the agreement forfeited, and attempted by means of threats to compel the complainant to give up the agreement and come under a lease; that as soon as the complainant was aware of the fact that the defendant would demand specie, he used due diligence to procure the same, and tender it to her; but she evaded his offers, and refused to receive it, upon the ground that it was not tendered on the first day of May.

The only objection made by the defendant on the first day of May having been overcome by the complainant, and the situation of the parties still being the same, there is no reason why the agreement should not be performed.

The following points are clearly and indisputably established by the pleadings and evidence in this cause.

1. That the agreement of the thirtieth day of December was fairly and honestly made between the parties.

2. That the purchase money is the full value of the land agreed to be conveyed.

3. That from the time of making the agreement it has always been the intention and wish of the complainant to fulfil the agreement, and that he undertook in good faith to perform the same on his part.

4. That the performance on the first day of May, was prevented by a difficulty suddenly thrown in the way by the defendant.

5. That the complainant removed that difficulty as soon as it was possible for him to do so under the circumstances of the case.

6. That the demand of specie by the defendant on the first day of May was a mere pretence; it was not made to procure the specie, but for the purpose of breaking up the agreement.

We submit, therefore, that the complainant has made out a clear case for relief, unless the defence set up by the defendant is sufficient in law and equity to overcome it.

The defendant in answer, sets up two matters of defence.

1. That the complainant broke the agreement on the first day of May, by not being ready to make the first payment in specie.

2. That the agreement of the thirtieth day of December was rescinded by a parol agreement made between the parties on the first day of May.

As to the first defence, the evidence shows that the defendant put the objection altogether upon the time of payment, upon not having the specie there on the day. When complainant asks for a day to get the money, she refuses it.

When the specie was afterwards offered to her, she refuses it, upon the ground that it was not tendered on the first day of May.

As soon as the defendant and her agent discover that complainant is not prepared with the specie, they take advantage of that fact, and declare the agreement forfeited, and threaten him with an immediate arrest and damages. This threat was not made to compel a performance of the agreement, but for the purpose of inducing the complainant to abandon the contract altogether, else why not accept the complainant's offer at the time to procure the specie, or receive it when it was offered to her ten days after?

The objection to the money on the first day of May, was

premeditated by the defendant and her agent, Hildebrand. Hildebrand says, in his evidence, that they consulted about it two weeks before, and concluded to make the objection. Yet no notice is given to the complainant. This was an undue advantage taken of the complainant.

The case and evidence shows that the complainant, for fear of surprise, had inquired of the defendant as to the kind of money she would receive, and that she waived the specie.

The defendant, in fact, admits the waiver of her right to have the specie, in her answer, when by way of demurrer she sets up the statute of frauds, and insists that it is not binding because not in writing.

We do not offer this evidence as a parol agreement to alter or amend the written agreement. Neither do we set it up as a contract relative to the sale of lands, within the meaning of the statute of frauds. But we do insist that it is competent evidence to show that the defendant consented to a certain mode and manner in which the complainant might perform this part of the written contract, and that she could not afterwards withdraw that consent to the surprise and prejudice of the complainant.

This evidence does not alter the substance of the contract. It is information, or direction upon which the complainant had a right to rely and act until informed to the contrary. It is evidence to show that the defendant led the complainant into the difficulty, which she now seeks to take advantage of.

If the articles do not specify the kind of money to be paid, it may be shown that at the time the articles were entered into, it was agreed by the parties by parol that the installments should be paid in whatever money was current at the time : 1 *Yeates*, 135 ; 2 *Dallas*, 173 ; 3 *Stark's Ev.* 1054 ; *Warren* v. *Mains*, 7 *John. R.* 476.

So the time for the performance of a covenant may be waived by a parol agreement : *Fleming* v. *Gilbert*, 3 *John. R.* 528.

A substantial, though not a literal performance of an agree-

ment, is sufficient, if the plaintiff by parol waived the literal performance of the condition: 3 *John. R.* 528, 531.

The court will not permit a party to take advantage of a circumstance not affecting the substance of the matter: 2 *Story's Eq.*

Time is not deemed in equity to be of the essence of the contract: 2 *Story's Eq.* 85.

The defendant, in her answer, sets up in the second place, that there was a parol agreement entered into between the parties on the first day of May, eighteen hundred and thirty-eight, by virtue of which she insists the articles of agreement were rescinded and given up.

This parol agreement, according to the defendant's answer and evidence, was nothing more than an understanding that the parties would meet at a future day and execute a written lease for the premises, when the articles were to be given up.

That agreement was never consummated, no lease has ever been executed between the parties, and the articles have not been given up.

Is not the written agreement then, according to the defendant's own evidence, still in full force? What act of either party has put an end to it? It certainly was not put an end to on the first day of May, for it was agreed, according to defendant's evidence, that the article should remain in force in the hands of Peer, until the tenth day of May. What took place on the tenth day of May? Nothing, according to the defendant's own answer.

She says that Pickle said nothing to her, or she to him, about the lease. She says the lease was in the house, but it was not produced.

Peer was not there with the article of agreement, and had no notice to be there.

The defendant has never demanded the article of Peer, or signified her consent to have it cancelled.

The articles of agreement are therefore still in full force, according to the defendant's own showing.

28

[Pickle v. Auble.]

But by the complainant's evidence, it appears that no such parol agreement was made on the first day of May, as set up by the defendant.

The evidence of Daniel Peer is entitled to superior credit over that of Hildebrand, the advisor and instigator of the defendant, or that of her sons and sister-in-law. He had been selected by both the parties to draw and hold the articles between them, he was there on that day to see them executed, he heard all that passed, and is an indifferent witness between the parties.

But if your excellency should be of opinion that a parol agreement has been proven,

We then insist that no parol executory agreement will rescind or destroy an agreement in writing under seal, relative to the sale of lands: 3 *Starkie's Evidence, part* 4, 1050 ; 9 *Modern*, 302 ; 2 *Atkyns*, 384 ; 6 *Mass.* 24 ; 6 *Hals.* 174 ; 3 *Green*, 116 ; 3 *Wils.* 275 ; 13 *Wendell*, 71 ; 2 *Wils.* 86 ; 1 *Phillips' Evidence*, 563.

A parol discharge of a written agreement may in some cases be admitted as a defence to a specific performance, under the following rules, which may be collected from all the cases.

1. The parol agreement must be an absolute discharge made upon good and fair consideration.

2. It must have been executed in whole or in part, and the rights and interests of the parties changed by it.

3. There must be some equity arising upon the new agreement.

4. It must appear that a specific performance of the written agreement would be unjust under the circumstances disclosed by the parol agreement.

5. Clear and unequivocal proof must be made of the parol agreement: *Sugden on Vendors*, 138, 139 ; *Equity Cases, Abr.* 32, 44 ; 7 *Vesey*, 219 ; 2 *John. Chan.* 598.

The court will look at the peculiar circumstances of the case.

Pickle was there on the first day of May, without counsel. The objection to his money was a surprise upon him. He was

told that he had forfeited his agreement, and was liable to damages; threatened with an arrest, unless he would give up the agreement and take a lease. Whatever he may have said under these circumstances, ought not to prejudice his rights under the articles of agreement, especially when it is not pretended that this parol agreement was ever executed by either party.

There is a pretence set up in the defendant's answer, which requires notice; it is this.

That the complainant did not tender the whole amount of the first payment in bank bills, but only about two hundred dollars.

It is evident that the defendant attempts to equivocate upon this point, in her answer.

She keeps back the fact that Sutton was there with part of the money, and ready and offered to pay it.

That she and her attorney stopped Pickle from counting the money, upon the ground that it was not specie.

The objection at the time was not to the quantity of the money, or to the kind of bills, but solely upon the ground that it was not gold and silver.

The evidence is clearly with the complainant, on this point.

In determining this case, the chancellor will consider,

1. Whether the agreement of the thirtieth of December, eighteen hundred and thirty-seven, was originally such as this court would have carried into execution? If it was, then

2. Whether what passed subsequently, ought to prevent a specific performance ? *Price* v. *Dyer*, 17 *Vesey*, 363.

There is no objection to the original agreement. It is admitted to be a just and fair agreement.

Nothing has passed since the agreement, to vary the situation of the parties.

A performance of the agreement now, will place the parties just where they stood on the first day of May, eighteen hundred and thirty-eight, neither will have lost or gained any thing. The defendant will get the purchase money and in-

terest, and the complainant will keep his land and improvements.

. But if this agreement is not performed, injustice will be done to the complainant. He is in possession under the agreement, and has made large improvements upon the same. He has always been willing to perform the agreement on his part, and only prevented from doing so by captious objections on the part of the defendant. If this bill should be dismissed and the injunction dissolved, the defendant will turn the complainant out of possession ; he will then lose the improvements and be subjected to an action for the use of the premises, without any defence at law. This would operate as a fraud upon the complainant.

As to the rights of the parties under a part performance of a contract for the sale of lands, when the purchaser has been let into possession and made improvements, see 2 *Story's Eq.* 62, 69.

When the terms of the agreement have not been strictly complied with, still if there has not been gross negligence in the party, and it is conscientious that the agreement should be performed, the court will decree a specific performance : 2 *Story's Eq.* 83—87 ; *Ibid*, 51, 52.

When nothing but a specific execution of the contract will do complete justice between the parties, the court will decree performance, although the party seeking it has not strictly performed his part of the contract : 1 *Peters*, 376 ; 2 *Story*, 84, *note*.

When there has been no change of circumstances affecting the character or the justice of the contract, when compensation for the delay can be fully given, when he who asks performance is in a condition to perform his own part of the agreement, and has shown himself ready, desirous, prompt and eager to perform the contract, the suit is treated with indulgence by the court and a specific performance will be decreed : *Story's Eq.* 87, *and cases there referred to.*

We submit to the court that this case is within the rules laid down in the above cases, and that the complainant has fully sustained his bill, and is entitled to relief.

[Pickle v. Auble.]

We also submit, that as the performance of the agreement has been prevented by the unreasonable conduct of the defendant, she should pay the costs.

*Saxton,* for defendant.

1. The complainant having failed to perform the contract on his part, is not entitled to a decree for a specific performance. He was bound to tender the first payment in specie.

2. That the agreement to rent rescinded the contract of sale : *King* v. *Morford, Saxton,* 279, 280; *Stevens* v. *Cooper,* 1 *John. Chan.* 429.

An agreement in writing may be discharged or rescinded by parol, notwithstanding the statute of frauds : 1 *Vern.* 240.

THE CHANCELLOR.   I am of opinion,

1. The complainant is entitled to a decree for a specific performance of the contract of the thirtieth of December, eighteen hundred and thirty-seven, upon payment of the consideration therein expressed, with interest.

2. The evidence satisfies me that complainant purchased in good faith, for a fair price, and with an intention to fulfill his contract ; that the defendant's conversation had fully justified the belief on complainant's part that specie would not be demanded, and was, therefore, sufficient excuse for its not being tendered on the day ; and that a demand on that day, and a refusal to give reasonable time for producing the specie, was arbitrary and unjust, and will not defeat the complainant of his rights under the contract, and especially so after being in possession and making improvements on the property.

3. That the complainant's promise to take a lease was made under the impression that his right to demand a deed was gone, by the course of defendant's conduct towards him, in demanding specie, and should not be allowed to avail the defendant in equity.   It was designed, under this idea only, as a protection temporarily to the complainant's possession.

28*

4. That complainant's decree should be without costs, after his folly on the subject of the lease.

5. That a reference be taken to a master to ascertain the amount due on the contract.